In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00124-CR
______________________________


MICHAEL L. SCOTT, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 13,405


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Michael L. Scott was found guilty by a jury of indecency with a child by contact. See
Tex. Pen. Code Ann. § 21.11(a)(1) (Vernon 2003). The jury assessed punishment at
seven years' imprisonment. Scott appeals, challenging the sufficiency of the evidence to
support his conviction and the trial court's refusal to include a charge on assault by
offensive or provocative contact. We affirm. 
Sufficiency of the Evidence
          Scott was convicted of indecency with his stepdaughter, A.H., eleven years old at
the time Scott last touched her. The jury heard A.H.'s initial interview at the Children's
Advocacy Center and her trial testimony. Michelle Scott, A.H.'s mother and Scott's
estranged wife, testified as well. The jury considered Scott's videotaped statement to
Robert Cromley, an investigator with the sheriff's department, and Scott's own testimony,
along with that of his sons. The State also presented the testimony of a nurse practitioner. 
          Indecency with a Child
          A person commits an offense if, with a child younger than seventeen years and not
the person's spouse, the person engages in sexual contact with the child or causes the
child to engage in sexual contact. See Tex. Pen. Code Ann. § 21.11(a)(1). "Sexual
contact" means the following acts, if committed with the intent to arouse or gratify the
sexual desire of any person:
(1) any touching by a person, including touching through clothing, of
the anus, breast, or any part of the genitals of a child; or

                     (2) any touching of any part of the body of a child, including touching
through clothing, with the anus, breast, or any part of the genitals of a
person.
Tex. Pen. Code Ann. § 21.11(c) (Vernon 2003). A person acts intentionally with respect
to the nature of the conduct or a result of the conduct when it is the person's conscious
objective or desire to engage in the conduct or cause the result. Tex. Pen. Code Ann.
§ 6.03(a) (Vernon 2003). The offense of indecency with a child requires proof of the
accused's intent to engage in the proscribed contact, rather than intent to bring about a
particular result. Rodriguez v. State, 24 S.W.3d 499, 502 (Tex. App.—Corpus Christi 2000,
pet. ref'd). 
          Standards of Review
          In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). We are to view the relevant
evidence in a light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). We must evaluate all of the
evidence in the record, both direct and circumstantial, whether admissible or inadmissible. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).
          In a factual sufficiency review, the appellate court views all the evidence in a neutral
light and determines whether the evidence supporting the verdict is too weak to support
the finding of guilt beyond a reasonable doubt, or if evidence contrary to the verdict is
strong enough that the beyond-a-reasonable-doubt standard could not have been met. 
Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State,
144 S.W.3d 477, 486 (Tex. Crim. App. 2004)).
          The testimony of a child victim alone is sufficient to support a conviction for
aggravated sexual assault or indecency with a child. See Tex. Code Crim. Proc. Ann. art.
38.07 (Vernon 2005); Perez v. State, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet.
ref'd); Tear v. State, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).
          Intent to Arouse or Gratify
          Scott maintains that he touched A.H.'s vagina only to apply the medicated cream
to her chronic vaginal rash. From this, we read Scott's contention as one challenging the
evidence to support the jury's finding of the intent element of the offense. The essence of
this part of his argument is that there is no evidence Scott made contact with A.H.'s
genitals or breasts "with intent to arouse or gratify [his] sexual desire." 
          Rarely will there be direct evidence of what an accused intended at the time of the
incident. Thus, the fact-finder usually must infer intent from circumstantial evidence rather
than direct proof. See Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). 
More specifically, in the context of indecency with a child, the fact-finder can infer the
requisite intent to arouse or gratify the sexual desire from conduct, remarks, or all the
surrounding circumstances. See McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim.
App. [Panel Op.] 1981). The intent to arouse or gratify may be inferred from conduct
alone. Id. No oral expression of intent or visible evidence of sexual arousal is necessary. 
Gregory v. State, 56 S.W.3d 164, 171 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd).
          Here, the State presented evidence from Mary McKenzie, a family nurse
practitioner, that a child should be able to apply over-the-counter medication between the
ages of five and eight and apply prescription medication between ages eight and nine. She
explained that the child may have to be shown how to do it at first and may have to be
reminded when to do it. Michelle


 testified that the chronic rashes were related to ringworm
and that she taught A.H. how to apply the medication when A.H. was between five and
seven years old. Similarly, A.H. testified that her mother taught her how to apply the cream
when she was seven. A.H. explained that Scott had refused to let her put the medication
on herself. A.H. further testified that Scott would put his hand down her pants and move
his fingers around at times when no medication was involved. Scott testified that A.H. was
ten or eleven years old when he last applied the medication. 
          The jury could have found the requisite intent in A.H.'s testimony regarding times
when Scott touched her privates unrelated to application of medication. Also, from the
evidence that Scott applied the medication when A.H. was ten or eleven and able to apply
it herself, the jury could infer that Scott rubbed the cream on A.H.'s vagina with the intent
to arouse or gratify himself. In light of A.H.'s age and the evidence that she was able to
apply the medication herself, there is sufficient evidence from which the jury could infer that
Scott acted with the requisite intent.
          Looking at surrounding circumstances in evidence, we point out that the jury also
could have inferred the requisite intent from A.H.'s testimony that Scott also reached under
her shirt to touch her breasts. See Fetterolf v. State, 782 S.W.2d 927, 933 (Tex.
App.—Houston [14th Dist.] 1989, pet. ref'd) (requisite intent to arouse found from
defendant's touching sleeping child's breast). The jury also could have determined that
Scott acted with the requisite intent from his own testimony that, on one occasion, he
pinched A.H.'s breast in a joking manner, teasing her about her development. While Scott
maintains that he did so in a joking manner, the jury could have equated Scott's interest
in his stepdaughter's developing body with an indication of his sexual intent in touching her
genital area long after she was able to apply the medication herself.
          Viewing the evidence in a light most favorable to the verdict, we conclude that the
evidence is legally sufficient to support the jury's verdict. Scott's videotaped statement and
testimony denying there was any sexual nature to the application of the cream or the
breast-pinching is evidence contrary to the jury's verdict. However, reconciliation of the
conflict between Scott's testimony and other evidence in the record is a duty left to the jury. 
Based on a neutral review of the record before us, we cannot say that the State's evidence
was too weak to support a finding of guilt beyond a reasonable doubt. Nor can we
conclude that Scott's testimony constitutes evidence so strong that the State could not
have met its burden of proving each element of the offense beyond a reasonable doubt. 
Accordingly, we find that the record contains legally and factually sufficient evidence from
which the jury could conclude that Scott touched A.H.'s genitals and breasts with the
specific intent to arouse and gratify his sexual desire. We overrule Scott's first and second
points of error.
          Failure to Use the Term "Genitals"
          Scott also challenges the sufficiency of the evidence on the basis that A.H. never
used the term "genitals" when she described the events. Instead, he points out, A.H. used
the term "private areas." Since the State alleged that Scott made contact with A.H.'s
genitals, Scott argues, A.H.'s failure to use that term renders the evidence legally and
factually insufficient to support his conviction.
          Scott's position does not find support in caselaw. He points us to no case—and we
cannot find one—in which the child victim's failure to use the term specified in the
indictment rendered the evidence insufficient to support the conviction. To the contrary,
the evidence has been held sufficient when a child victim testified that the defendant put
his hand inside her panties and on her private part. See Billy v. State, 77 S.W.3d 427, 429
(Tex. App.—Dallas 2002, pet. ref'd). Billy challenged the legal sufficiency of the evidence,
although not specifically in terms of the language the victim used to describe the events. 
Even though the indictment referred to touching a part of the victim's genitals, the Dallas
court concluded that the evidence was legally sufficient to sustain the conviction for
indecency with a child. Id. at 428–29.
          Scott points to Bryant v. State, 685 S.W.2d 472 (Tex. App.—Fort Worth 1985, pet.
ref'd), for instructive purposes. In Bryant, the child victim testified that Bryant had put his
hand in her underpants and touched her "down between [her] legs." Id. at 474. The State
alleged that Bryant had touched the victim's vagina and challenged the sufficiency of the
evidence when the victim failed to specifically identify the body part touched. Id. Relying
on the reasoning in Tyra v. State, 534 S.W.2d 695, 696–97 (Tex. Crim. App. 1976),
overruled on other grounds by Cooper v. State, 631 S.W.2d 508, 514 (Tex. Crim. App.
1982), and pointing out that courts have considered a child victim's inability to use technical
terms to accurately describe his or her body, the Fort Worth court concluded that the
victim's testimony sufficiently identified the body part. Bryant, 685 S.W.2d at 474 (citing
Clark v. State, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977)).
          Like the victim in Bryant, A.H. testified in somewhat general terms when specifically
asked where Scott touched her, using the term "private areas." However, she also
continued to explain that Scott touched her inside her pants. So, consistent with Tyra and
Bryant, we conclude A.H.'s use of the term "private areas" and her failure to use the
technical term "genitals" does not render the evidence legally or factually insufficient. 
          Further, Scott's position ignores the rest of the record. The record clarifies any
confusion arguably caused by A.H.'s use of the term "private areas." For instance, in
Scott's videotaped statement, he explained in great detail where he applied the medicated
cream. It is abundantly clear he was referring to female genitalia. Further, in his own
testimony, we see that the contact at issue relates to the touching in connection with the
application of medicated cream to treat A.H.'s vaginal rashes. Michelle's testimony also
lends itself to this conclusion by making clear that A.H. suffered from vaginal rashes for
which she had to have the medication. The record makes clear that the "private areas"
means genital area. 
          Evidence Going to the Credibility and Character of A.H.'s Mother
          Scott also contends the credibility and character of Michelle, A.H.'s mother,
undermines the verdict so much that it renders the evidence insufficient. Specifically, Scott
points to the animosity between Michelle and Scott, Michelle's desire to keep their son
away from Scott, A.H.'s desire to please her manipulative mother, Michelle's prior felony
conviction for sexual performance of a child, and her continued questionable sexual
behavior while on community supervision. 
          While Scott points us to considerable impeachment evidence, we are not the judges
of credibility. That determination belongs to the jury, and we must not substantially intrude
on the jury's role as the sole judge of the weight and credibility of witness testimony. See
Wesbrook v. State, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000); Perez, 113 S.W.3d at 837. 
We add that Michelle's is not the only testimony that supports the conviction. The jury may
have discounted Michelle's testimony and concentrated on A.H.'s account or Scott's own
statement and testimony.
          We simply cannot know the impact the impeachment evidence had on the jury's
assessment of Michelle's credibility, and such a determination is not ours to make. See
Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). We therefore conclude
that, despite the impeachment and character evidence Scott introduced to undermine
Michelle's testimony, the evidence remains legally and factually sufficient to support the
jury's verdict.
          Significance of the Length and Difficulty of Jury Deliberations
          Scott finally argues that the length and difficulty of the jury deliberations show that
the evidence is legally and factually insufficient to support the jury's verdict. Scott points
out that the jury initially indicated it was deadlocked, eleven to one. The trial court
instructed the jury to continue deliberating. A short time later, the jury communicated by
note "that further deliberations might result in a verdict" and requested to reconvene the
next morning. The trial court excused the jury for the day. After two more hours of
deliberation the next morning, the trial judge polled the jury to determine whether each juror
believed continued deliberation would result in a verdict. After each juror answered
affirmatively, the jury deliberated for about fifteen minutes more before arriving at its
verdict. 
          We do not consider such observations in our review of the sufficiency of the
evidence. Perhaps the jury did take a long time in arriving at a verdict. That is not to say,
however, that it arrived at an incorrect verdict or one not supported by sufficient evidence. 
As the Austin court pointed out, such information is interesting, but irrelevant to our review
of the evidence:
Further, appellant notes that the jury did not have an "easy time" in making
its decision; that the jury had a portion of the complainant's testimony read
back; that twice the jury indicated that it was "hung," giving the numerical
split; and that the trial court gave an "Allen" charge before a verdict was
reached. . . . These factors are interesting, but they are not evidence to be
considered under the appropriate standard of review.

Perez, 113 S.W.3d at 837. In fact, one could arrive at the conclusion that the length of
deliberations shows thoughtful consideration of the evidence presented and that such
consideration, in turn, lends itself to correctness of the verdict. Simply put, the time the jury
takes in arriving at its verdict could be said to support either party's position. Because the
length of deliberations lends nothing to our assessment of the evidence, we conclude that
such information does not affect our conclusion that legally and factually sufficient
evidence supports the verdict. 
Jury Charge
          Scott contends the trial court erred by refusing to include in the jury charge an
instruction on assault. He argues that assault by offensive or provocative contact is a
lesser-included offense of indecency with a child by contact. See Tex. Pen. Code Ann.
§§ 21.11(a)(1), 22.01(a)(3) (Vernon Supp. 2006).
          Lesser-Included Offenses
          The trial court must submit a charge on a lesser-included offense if (1) the
lesser-included offense is included within the proof necessary to establish the offense
charged; and (2) some evidence exists in the record that, if the defendant is guilty, he or
she is guilty of only the lesser offense. See Hampton v. State, 109 S.W.3d 437, 440 (Tex.
Crim. App. 2003); Shea v. State, 167 S.W.3d 98, 105–06 (Tex. App.—Waco 2005, pet.
ref'd). Article 37.09 explains that a lesser offense is included within the proof necessary
to establish the offense charged when:
(1) it is established by proof of the same or less than all the facts
required to establish the commission of the offense charged;
 
(2) it differs from the offense charged only in the respect that a less
serious injury or risk of injury to the same person, property, or public interest
suffices to establish its commission;
 
(3) it differs from the offense charged only in the respect that a less
culpable mental state suffices to establish its commission; or
 
(4) it consists of an attempt to commit the offense charged or an
otherwise included offense.

See Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981).
          Assault by Offensive Contact Compared with Indecency with Child by Contact
          Again, because the State charged Scott with the offense of indecency with a child
by sexual contact, the State had to prove that Scott acted "with the intent to arouse or
gratify the sexual desire of any person." See Tex. Pen. Code Ann. § 21.11(c). In contrast,
a person commits the offense of assault by offensive or provocative contact when he or
she "knows or should reasonably believe that the other will regard the contact as offensive
or provocative." See Tex. Pen. Code Ann. § 22.01(a)(3).
          Here, therefore, the State had to prove Scott acted with intent to arouse or gratify
the sexual desire of some person; it did not have to prove Scott knew or should have
reasonably believed that A.H. would regard the contact as offensive or provocative. Even
though there may be some evidence that is probative of both elements, they remain
distinctive elements. See Shea, 167 S.W.3d at 106; Ramos v. State, 981 S.W.2d 700, 701
(Tex. App.—Houston [1st Dist.] 1998, no pet.). Put another way, a defendant may be
found guilty of indecency with a child regardless of whether a complainant found the
conduct offensive or provocative. 
          Based on our evaluation of the elements of each offense, we join the Shea and
Ramos courts


 in concluding that the proof required to establish assault by offensive or
provocative contact is different, not less, than that required to prove indecency with a child
by contact. That said, assault under Section 22.01(a)(3) is not a lesser-included offense
of indecency with a child. See Tex. Code Crim. Proc. Ann. art. 37.09(1), (3); Shea, 167
S.W.3d at 106. We overrule Scott's contention.
Conclusion
          Having found the evidence legally and factually sufficient, and having concluded that
the trial court did not err by refusing to include assault by offensive or provocative contact
as a lesser-included offense, we affirm the trial court's judgment.




                                                                Donald R. Ross
                                                                Justice
 
Date Submitted:      June 23, 2006
Date Decided:         August 30, 2006 

Publish